UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CIVIL ACTION NO. 12-96-KKC

TRACY LANCIONE,                                                                                  PLAINTIFF,

V.                        **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                     DEFENDANT.

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on Tracy Lancione's appeal of the Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The court will grant the Commissioner's motion, R. 12, and deny Lancione's motion, R. 11, because substantial evidence supports the administrative decision.

At the date of her current applications for DIB and SSI, Lancione was 34 years old and had some prior work experience as a receptionist. AR 547; 114-118 (Ex. 1D); 119-125 (2D). She alleged disability beginning November 2, 2001, attributed to rheumatoid arthritis. AR 547. She filed her initial applications on May 9, 2006. Administrative Law Judge Roger Reynolds determined she was not disabled in a decision dated January 15, 2009; however, that decision was vacated by this district court and remanded to the ALJ for further proceedings. In that decision, the district court concluded that the ALJ erred at step two in the sequential process in determining her rheumatoid arthritis was not severe and remanded to the ALJ to consider the remaining steps.

1

Following remand, three hearings were held on January 14, 2011, April 19, 2011, and April 29, 2011. A vocational expert, William J. Kiger, and a rheumatology expert, Charles M. Plotz, both testified at the hearings. Thereafter, ALJ Samuel A. Rodner determined that Lancione was not disabled. AR 547-558. Under the traditional five-step analysis, *see Preslar v. Sec'y of Health and Human Servs*., 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520, 20 C.F.R. § 416.920; the ALJ found that Lancione had not engaged in substantial gainful activity since November 2, 2001, the alleged onset date, AR 549; that she had severe impairments of spinal osteoarthritis, degenerative changes in her feet, obesity, depression, and anxiety, AR 550; that her impairments or combination of impairments did not meet or equal one of the listed impairments, AR 550; that she retained the residual functional capacity ("RFC") to perform light-level work; and that, based on her RFC and the testimony of the VE, a number of unskilled jobs existed in the economy which she could perform such as a housekeeper/cleaner, polisher, and hand packager. AR 557. The ALJ thus denied Lancione's claims for DIB and SSI on June 6, 2011. AR 558. The Appeals Council reviewed the ALJ's decision and denied Lancione's request for review on February 25, 2012, and she commenced this action.

Lancione challenges the ALJ's ruling on the following grounds: (1) that the ALJ improperly relied upon Dr. Plotz's testimony; (2) that the ALJ should have re-contacted consultative examiner Dr. Deel; and (3) that the ALJ failed to properly evaluate the medical opinions in the record.

**1. Dr. Plotz's testimony**

Contrary to Lancione's assertion, the ALJ properly considered the testimony of Dr. Plotz, a specialist in rheumatoid arthritis, who testified at the April 29, 2011 hearing. First, Lancione argues that the ALJ erred by specifically requesting Dr. Plotz and not following the procedure in

HALLEX 1-2-5-36 in allowing for a physician to be chosen randomly to testify at an administrative hearing. Upon review of the hearing transcript, the ALJ did not refer to Plotz by name, but merely indicated that he needed a rheumatology specialist to testify and that there was "one in New York" that he hoped would be available to testify. AR 694. Nothing in the record indicates that ALJ manipulated the roster of physicians to specifically obtain Plotz or to indicate that there was any collusion between the ALJ and Plotz.

In addition, Lancione argues the ALJ should discredit Plotz's testimony because Plotz opined that Lancione took large amounts of oxycodone and other opiates for some time and described her behavior as typical of an addict. *See* AR 615-616. Lancione argues Plotz's opinion is unfounded and beyond the scope of his expertise. However, the record reflects that blood tests in October, November, and December 2010 all have positive indications for benzodiazepine, methadone, opiates, and phencyclidine. AR 1505, 1517, 1527, 1528, 1532. Despite these indicators in the record to support Plotz's opinion, the ALJ did not adopt this portion of Dr. Plotz's testimony.

Lancione further tries to discount Dr. Plotz's testimony indicating that Dr. Plotz may not be "up to date with newer medical findings" because of his age. These claims have no support in the record. Rather, Dr. Plotz's curriculum vitae indicates he is a master in the American College of Rheumatology, a past president of the New York Rheumatism Association, recipient of the American College of Rheumatology Gold Medal Achievement award, and the author of 175 articles in peer-reviewed journals. AR 1599.

Lancione also suggests that Plotz's testimony was vague and should be discounted because he was not able to cite to specific exhibits during the April 2011 hearing. This argument is unpersuasive, given that the voluminous record includes almost two thousand pages. Further,

3

Dr. Plotz stated that he read Dr. Shearer's notes carefully and that upon review of her medical history, he did not find any evidence to support her claim of rheumatoid arthritis. Lancione does not explain how the failure to make specific citations to the record would have altered the ALJ's assessment of Plotz's testimony.

Finally, Lancione argues that Dr. Plotz showed unreasonable bias against Dr. Shearer the treating physician. This argument also lacks merit because it is irrelevant whether Dr. Plotz held bias against Dr. Shearer. Rather, the ALJ is tasked with making credibility determinations and reviewing the medical evidence in the record. For these reasons, Lancione's first argument to discredit Dr. Plotz's testimony must fail.

### 2. Dr. Deel's testimony

In her second issue, Lancione claims that the ALJ had a duty to re-contact consultative examiner Dr. Deel to clarify his reference to "tender nodules." Dr. Deel performed a consultative exam of Lancione on November 23, 2009, and noted that she had a painful range of motion and tenderness to virtually all joints with "painful nodules." *See* AR 1072-75 (Exhibit 28F). The ALJ rejected Deel's opinion, AR 554-555, explaining that no other medical evidence indicated signs of inflammation. Further, despite Deel's finding of a painful range of motion his notes reflect that she had a "5/5 grip strength and adequate fine motor movements." Deel opined that she could not work an eight hour work day. The ALJ rejected this opinion because he found that it was not supported by the rest of his examination notes which were "essentially normal and inconsistent with the findings of pain and painful nodules." *Id*. at 555.

Lancione's argument that the ALJ had a duty to re-contact Deel pursuant to SSR 96-2p lacks merit because that regulation addresses the weight given to a treating source medical opinion, which Deel was not. The ALJ has no duty to give controlling weight to the opinion of a

one-time consultative examiner. Further, the ALJ explained that he rejected Deel's opinion because it was both internally inconsistent and inconsistent with other medical evidence in the record. The ALJ thus was not required to obtain an updated medical opinion from an additional medical expert as Lancione suggests.

### 3. Weight Accorded to Medical Opinion Testimony

In her third issue, Lancione claims that the ALJ failed to give appropriate weight to the various medical opinions in the record, specifically that the ALJ erred in not giving controlling weight to Dr. Shearer's opinion as the treating physician, and Dr. Armitage's psychological assessment. In general, the opinion of a treating physician is given controlling weight if it is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 1527(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). An ALJ must provide "good reasons" for not giving a treating physician's opinion controlling weight. *Id*. The ALJ, however, is not required to give any weight to the conclusory opinion of a treating physician that the claimant is unable to work, since that determination is reserved for the Commissioner. *Vance v. Comm'r of Soc. Sec.*, 260 Fed. App'x 801, 804 (6th Cir. 2008).

Here, the ALJ did not violate the treating physician rule. ALJ Rodner in three detailed pages explains his reasoning for attributing "very reduced weight" to Dr. Shearer's testimony. AR 554-557. The ALJ found that Dr. Shearer's continued finding of "2+ edema" was inconsistent with Lancione's emergency room visits which did not reflect edema and noted only "mild edema" on one isolated occasion in 2009. *See* AR 555-56. Moreover, the ALJ stated that he gave Shearer's opinion reduced weight because he appeared to repeat his examination notes and because his findings were "markedly inconsistent" with Lancione's frequent emergency room trips which closely followed her treatment visits with Shearer. *See* AR 556 (discussing

Lancione's visit to Shearer on January 20, 2009, closely related in time to emergency room trips on January 14, 2009 and February 19, 2009). Finally, the ALJ indicated that although Dr. Shearer was treating Lancione with Remicade injections and arthritic medications, there was no objective clinical diagnosis of inflammatory arthritis in the medical record. AR 554-55. The opinion of a treating physician is only accorded great weight when it is supported by sufficient clinical findings and is consistent with evidence in the record. *Cutlip v. Sec. of Health and Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). Thus, the ALJ gave good reasons for his failure to give Dr. Shearer's opinion controlling weight.

In addition, Lancione argues the ALJ did not give sufficient weight to the opinion of Dr. Armitage, who performed a psychiatric consultative exam in October 2009, and concluded that Lancione had a major depressive disorder. Dr. Armitage was not a treating physician, but a psychological consultant who examined Lancione on a single occasion. *See* AR 1066-1071 (Ex. 27F). Thus, the ALJ was not obligated to give Armitage's opinion controlling weight. *See Wilson*, 378 F.3d at 544. The ALJ reflected that there was little to no evidence to corroborate her allegations of severe depression. AR 553. She never sought mental health treatment, other than a prescription for Cymbalta from Dr. Shearer. Further, the ALJ explained his reasoning for rejecting Dr. Armitage's opinion, indicating that he found state agency reviewing opinions of Dr. Athy and Dr. Stodola more persuasive. Dr. Athy found Lancione to be more competent than she presented herself with the ability to perform simple, repetitive tasks in a simple, routine setting. *See* AR 1093. Dr. Athy's assessment was affirmed by state reviewer Dr. Stodola. *See* AR 1119. The ALJ did incorporate the limitations to simple, repetitive tasks in a simple, routine setting in determining her RFC. Therefore, the court finds no error in the ALJ's assessment of Dr. Armitage's opinion.

The ALJ having properly applied the relevant legal standards and his decision being supported by substantial evidence,

**IT IS ORDERED** that Lancione's motion for summary judgment, R. 11, is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment, R. 12, is **GRANTED**.

The court will enter a separate judgment.

Dated this 11th day of December, 2012.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge